## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

**VENKATA SMILE RATNA MODUKURI**,

Plaintiff,

v.

**JENNIFER LARSON**, *et al.*,

Defendant.

Civil Action No. 23-3508 (TSC)

---

## <u>MEMORANDUM OPINION</u>

Plaintiff, a citizen of India, has sued Jennifer Larson, the Consul General of the U.S. Consulate General in Hyderabad; Patrice A. Lacina, the Deputy Chief of Mission for the U.S. Embassy in India; and Antony Blinken, the U.S. Secretary of State ("Defendants"). Plaintiff alleges that Defendants have unreasonably delayed the adjudication of his visa application and seeks relief under the Administrative Procedure Act ("APA") and Mandamus Act. Compl. ¶¶ 9–12, 34, ECF No. 1. Defendants have moved to dismiss Plaintiff's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Mot. to Dismiss, ECF No. 6 ("MTD"). For the reasons set forth below, the court will GRANT Defendants' Motion and dismiss this action.

## I.       BACKGROUND

The Immigration and Nationality Act ("INA") governs the issuance of visas to foreign nationals seeking to enter the United States on a permanent ("immigrant") or temporary ("nonimmigrant") basis. 8 U.S.C. § 1101 *et seq.* Within that framework, the "H-1B" nonimmigrant visa category allows prospective employers to sponsor visas for employees with specialized knowledge. 8 U.S.C. § 1101(a)(15)(H). To initiate the visa application process, the employer must certify the specialized nature of the job and their employment of the visa

applicant.  *Id.* § 1182(n)(1); 20 C.F.R. §§ 655.730(a), (c)(4); 8 C.F.R. § 214.2(h).  Then, the

applicant must complete the application, which typically includes an in-person interview at the

local embassy or consulate.  8 U.S.C. §§ 1182, 1201(a)(1), 1201(g), 1202(h); 22 C.F.R. § 42.62.

Once the process is complete, a consular officer "must issue the visa, refuse the visa, or . . .

discontinue granting the visa."  22 C.F.R. § 41.121(a).

  According to the Complaint, Plaintiff's employer-side application was approved in May

2022, and in November 2022 he was interviewed at the U.S. Consulate General in Hyderabad.

Compl. ¶¶ 14–15.  Immediately after the interview, the consular officer "informed Plaintiff that

the visa application was approved," but followed up with emails "stating that his case continues

to undergo processing."  *Id.* ¶ 16.  In April 2023, Plaintiff's application was officially

categorized as "Refused."  *Id.*  A visa refusal

> means the consular officer determined that the applicant was not eligible for a visa
> after completing and executing the visa application and any required interview.  It
> is possible that a consular officer will reconsider a visa application refused . . . at a
> later date, based on additional information or upon the resolution of administrative
> processing, and determine that the applicant is eligible.  When a consular officer
> refuses a case . . . , she or he will convey to the applicant whether the applicant is
> required to provide any further documentation or information, or whether the case
> requires additional administrative processing.

*Administrative Processing Information*, U.S. Dep't of State.[1]  Since that time, "Plaintiff has

inquired as to the status of his visa application on numerous occasions and received no

meaningful responses."  Compl. ¶ 17.

---

[1] *Available at* https://travel.state.gov/content/travel/en/us-visas/visa-information-
resources/administrative-processing-information.html.  Courts in this jurisdiction have
frequently taken "judicial notice of information posted on official public websites of
government agencies."  *Markowicz v. Johnson*, 206 F. Supp. 3d 158, 161 n.2 (D.D.C. 2016).

Plaintiff challenges the subsequent delay in further adjudication under the APA and the Mandamus Act.  *Id.* ¶¶ 14–34.  The court addresses both claims jointly because "in cases challenging agency delay, 'the standards for obtaining relief' under the Mandamus Act and the APA are 'essentially the same.'"  *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 17 (D.D.C. 2022) (quoting *Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010)).  "The central question in evaluating a claim of unreasonable delay is whether the agency's delay is so egregious as to warrant mandamus."  *Id.* (quoting *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)).  Plaintiff seeks an order "[m]andating that Defendants process Plaintiff's visa application within fifteen (15) calendar days . . . or as soon as reasonably possible."  Compl. ¶ 35.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), a plaintiff must establish that the court has subject matter jurisdiction over its claim.  *Moms Against Mercury v. Food & Drug Admin.*, 483 F.3d 824, 828 (D.C. Cir. 2007).  In evaluating such motions, courts "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged."  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).  However, the court may consider "any documents either attached to or incorporated in the complaint[,] and matters of which [courts] may take judicial notice."  *Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  But as with a 12(b)(1) motion, courts "treat the complaint's factual allegations as true" and "grant plaintiff the benefit

of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quotation marks and citation omitted). That said, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* And a court need not accept as true "a legal conclusion couched as a factual allegation," nor "inferences . . . unsupported by the facts set out in the complaint." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quotations omitted).

Defendants make five arguments for dismissal. First, that the Secretary of State is an improper defendant because he "neither has an alleged role in re-adjudicating the Visa Application, nor can favorably adjudicate an application for a visa." MTD at 5. Second, that Plaintiff has failed to establish the injury and redressability elements of standing. *Id.* at 6–15. Third, that challenges to the refusal of visa applications are barred by the consular nonreviewability doctrine. *Id.* at 15–19. Fourth, that Plaintiff's claims cannot succeed because the law does not identify a "clear, non-discretionary duty requiring a consular officer to adjudicate, let alone re-adjudicate, any specific visa application." *Id.* at 19; *see id.* at 19–26. And fifth, that the alleged delay here is not unreasonable. *Id.* at 26–35.

### III.    ANALYSIS

Plaintiff has not named improper defendants or failed to establish his standing. Because he has not plausibly alleged that any delayed re-adjudication of his refused application violated a clear statutory duty, however, the Complaint must be dismissed. Accordingly, the court need not decide whether consular nonreviewability applies in this case.

## A. __Improper defendant__

The Secretary of State is a proper defendant.  MTD at 3–4.  The redressability requirement of standing turns on "whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663–64 (D.C. Cir. 1996).  Defendants argue that "action on a specific Visa Application . . . is the exclusive province of a U.S. consulate."  MTD at 6.  And it is true that the INA "grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'" *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (quoting *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999)).

"Control over a consular officer's visa *determinations*—that is, her decisions to 'grant, deny, or revoke immigrant and non-immigrant visas,'" however, "is not the same as control over the *timing* by which the consular officer considers the applications presented to her." *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 10 (D.D.C. 2022) (quoting *Saavedra Bruno*, 197 F.3d at 1156) (formatting modified).  Plaintiff does not seek to compel a particular decision on his application; only to compel that it be decided soon.  *See* Compl. ¶ 35. And Defendants do not contend that the Secretary of State lacks authority to "direct[] consular officers 'to conclude . . . matter[s] presented to [them]' 'within a reasonable time,'" nor have they identified any authority supporting such a defense. *Al-Gharawy*, 617 F. Supp. 3d at 10 (quoting 5 U.S.C. § 555(b)).  Accordingly, the Secretary need not be dismissed as a defendant.

## B. __Standing__

Defendants' remaining arguments against Plaintiff's standing also fail.  Their first argument is that Plaintiff has not suffered a cognizable injury.  MTD at 7–14.  But courts in this district routinely recognize the "particularized injury" of "a delay in adjudicating [a] visa

petition[]." *Al-Gharaway*, 617 F. Supp. 3d at 9; *see, e.g.*, *Babaei v. United States Dep't of State*, No. CV 23-1244 (TJK), 2024 WL 1178453, at *3 (D.D.C. Mar. 19, 2024) ("As other judges in this District have consistently held, visa applicants enjoy a procedural right to reasonably expeditious agency action that is tethered to their concrete professional and financial interest.") (formatting modified).  The INA mandates that "[a]ll nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer."  8 U.S.C. § 1202(d).  Plaintiff has alleged concrete injuries resulting from the delay in that adjudication, including psychological distress, loss of professional opportunities, and financial hardship.  *See* Compl. ¶¶ 2–4.  That is enough to establish injury in fact.

Defendants' second argument is that the relief requested here "cannot remedy Plaintiff's supposed injuries" because he "pleads nothing in the Complaint that forcing another decision now would lead to a different result."  MTD at 14.  That argument mistakes the injury and remedy at issue in this case.  Plaintiff seeks a "final adjudication of [his] application[]; not a specific outcome."  *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Service to the United States v. Pompeo*, No. 18-cv-1388 (TSC), 2019 WL 367841, at *8 (D.D.C. Jan. 30, 2019).  Thus, the injuries associated with Defendants' alleged unreasonable delay "would be redressed by a decision, one way or the other."  *Babaei*, 2024 WL 1178453, at *3. The court thus finds no defects in Plaintiff's standing.

## C.  <u>Consular nonreviewability</u>

Defendants also move to dismiss this case under the consular nonreviewability doctrine, which "shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise."  *Baan Rao*, 985 F.3d at 1024.  Defendants argue that a consular officer's "refusal" of a visa application always constitutes a nonreviewable "withholding of a visa."  MTD at 16.  However, several courts in this district have rejected that

argument, concluding that such "refusal" may be reviewable where it appears to be "merely provisional, with a final decision yet to come"—*e.g.*, because "administrative processing" remains ongoing.  *Al-Gharawy*, 617 F. Supp. 3d at 16; *see also Akrayi v. United States Dep't of State*, No. 22-CV-1289, 2023 WL 2424600, at *3 (D.D.C. Mar. 9, 2023).  That is the status Plaintiff alleges here:  His application was "placed in so-called 'administrative processing.'" Compl. ¶ 16.

The court need not decide this issue.  "Dismissal based on consular nonreviewability . . . is a merits disposition under Federal Rule of Civil Procedure 12(b)(6)."  *Baan Rao*, 985 F.3d at 1027.  And because the court concludes that there are independent reasons to dismiss Plaintiff's claims, *see infra* Sections III.C.–D, it need not decide whether consular nonreviewability applies, *see Almaqrami v. Pompeo*, 933 F.3d 774, 784 n.3 (D.C. Cir. 2019) ("[C]ourts may assume without deciding that plaintiffs' statutory claims are reviewable and proceed to the merits notwithstanding consular nonreviewability." (internal quotation omitted)); *Zandieh v. Pompeo*, No. CV 20-919, 2020 WL 4346915, at *4 (D.D.C. July 29, 2020) ("[B]ecause it finds that the delay asserted here is not unreasonable," the court "need not decide whether plaintiffs' claims are reviewable." (internal quotation omitted)).

**D.  Unreasonable delay**

Plaintiff's claims must be dismissed because they have failed to plausibly allege an unreasonable delay as a matter of law.  That conclusion is guided by the so-called "*TRAC* factors" set forth in *Telecommunications Research & Action Center v. FCC (TRAC),* 750 F.2d 70, 80 (D.C. Cir. 1984).  Both parties resist the *TRAC* factors' applicability here—albeit for different reasons.  But their arguments mistake the law.

Defendants argue that "[a]bsent an independent statutory duty, the *TRAC* factors themselves do not decide whether an agency has violated a clear duty to act for purposes of

mandamus jurisdiction." MTD at 25.[2] In other words, because Plaintiff seeks mandamus relief, to establish jurisdiction he "must identify a clear 'non-discretionary act,' or 'a clear duty to act[,]' that the law compels an agency to take"—and if he does not, "an agency's delay to act, however long, cannot be unlawful or unreasonable." MTD at 20–21 (first quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004); then quoting *Am. Hosp. Ass'n*, 812 F.3d at 189). But the D.C. Circuit has squarely rejected that reasoning, explaining that "depending on the circumstances," the *TRAC* factors themselves may still govern the initial mandamus inquiry:

> For example, in situations where plaintiffs allege that agency delay is unreasonable despite the absence of a specific statutory deadline, the entire *TRAC* factor analysis may go to the threshold jurisdictional question: does the agency's delay violate a clear duty?

*Am. Hosp. Ass'n*, 812 F.3d at 190. Thus, even accepting Defendants' premise that there is no specific statutory deadline here, the *TRAC* factors still govern the court's evaluation of whether it has mandamus jurisdiction over Plaintiff's unreasonable delay claim.

For his part, Plaintiff contends that "the fact-intensive nature of the inquiry into whether a delay is unreasonable" means that it is "inappropriate to dismiss undue delay claims at the motion to dismiss stage." Opp'n to Mot. to Dismiss, ECF No. 7, at 15 ("Opp'n"). And to be sure, deciding a claim of unreasonable delay is a "nuanced task requiring consideration of the particular facts and circumstances before the court." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003). "Nevertheless, the *TRAC* factors have been applied at the motion to dismiss stage to determine whether a plaintiff's complaint has alleged

---

[2] "To show entitlement to mandamus, plaintiffs must demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). Because Plaintiff does not satisfy the first two parts of this test, the court does not reach the third.

facts sufficient to state a plausible claim for unreasonable administrative delay." *Khan v. Bitter*, No. CV 23-1576, 2024 WL 756643, at *4 (D.D.C. Feb. 23, 2024) (internal quotation omitted) (formatting modified).  That is because, sometimes, the "plaintiff's claimed delay in the adjudication of [a] visa is not unreasonable as a matter of law under the [*TRAC*] factors." *Id.* at *3 (internal quotation omitted); *see, e.g.*, *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 95 (D.D.C. 2020) ("An analysis of the TRAC factors as applied here leads this Court to the same conclusion—that the twenty-five-month delay at issue here is not unreasonable as a matter of law, given the circumstances.").

Having concluded that it is appropriate to apply the *TRAC* factors, the court considers each of them in turn:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (internal quotations omitted).  "[T]hese factors function not as a hard and fast set of required elements, but rather as useful guidance as to whether a delay is 'so egregious as to warrant mandamus.'"  *Am. Hosp. Ass'n*, 812 F.3d at 189 (quoting *TRAC*, 750 F.2d at 79).

### i.   Factors one and two

"The first factor is the most important TRAC factor, and is typically considered together with the second TRAC factor."  *Arab v. Blinken*, 600 F. Supp. 3d 59, 69 (D.D.C. 2022) (internal quotation omitted).  Their joint focus is "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale."  *Ctr. for Sci.*

*in the Pub. Int. v. U.S. Food & Drug Admin.*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).  As
Plaintiff acknowledges, Compl. ¶ 27, "no statutory or regulatory timeframe [exists] within which
the State Department or a consular officer must re-adjudicate visa applications," *Khan*, 2024 WL
756643, at *4 (quotation omitted).

"Absent a congressionally supplied yardstick, courts typically turn to case law as a guide"
for the reasonableness of a delay.  *Id.* (quotation omitted).  "Even though courts have drawn no
bright lines to determine reasonableness, district courts have generally found that immigration
delays in excess of five, six, seven years are unreasonable."  *Id.* (formatting modified).  By
contrast, courts in this district "consistently have held that two or three years does not constitute
an unreasonable delay."  *Tekle v. Blinken*, No. 21-CV-1655, 2022 WL 1288437, at *3 (D.D.C.
Apr. 29, 2022); *see, e.g.*, *Akrayi*, 2023 WL 2424600, at *3 ("The delay in [visa] processing,
almost three years, does not reach the length that courts have found unreasonable."); *Sarlak v.
Pompeo*, No. CV 20-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) (collecting cases);
*Skalka v. Kelly*, 246 F. Supp. 3d 147, 154 (D.D.C. 2017) (delay of about two years did not
"require judicial intervention").

The first and second factors favor Defendants.  The delay in this case began in April
2023, when Plaintiff's visa application was refused without any subsequent action.  Compl.
¶¶ 16–17.  Plaintiff filed his Complaint about seven months later, in November 2023.  If the
court considers the delay period as running until the issuance of this Opinion, it amounts to about
seventeen months.  *See, e.g.*, *Mahmood v. U.S. Dep't of Homeland Sec.*, No. CV 21-1262, 2021
WL 5998385, at *6 (D.D.C. Dec. 20, 2021).  That makes the delay of a length typically
considered reasonable in this district, and Plaintiff fails to cite any cases that have found a
similar delay unreasonable.  *See* Opp'n at 20 (citing out-of-circuit cases involving delays of

thirty-one, twenty-four, twenty-seven, and thirty-two months).  And while Defendants fail to

provide any specific reasons for this delay (which weakens their position), they do refer

generally to the "scarce resources" that attend decisions about how to "prioritize the processing

of visa applications" in this context.  MTD at 28 (quotations omitted).  Those constraints,

consistent with what courts have recognized in other cases, tilt the first and second *TRAC* factors

in Defendants' favor.

      ii.    <u>Factors three and five</u>

      The third and fifth *TRAC* factors are also often considered together; they "examine 'the

nature and extent of the interests prejudiced by the delay,' including whether 'human health and

welfare' might be implicated."  *Khan*, 2024 WL 756643, at *5 (quoting *TRAC*, 750 F.2d at 80).

The Complaint alleges that Plaintiff has suffered primarily professional harms—missing out on

"experience and learning opportunities" associated with working in the United States—along

with several attendant harms like emotional distress, strained relationships at work, and financial

losses.  Compl. ¶¶ 2–4.  But these hardships—difficult though they may be—are not generally

afforded much weight in this context.  Plaintiff does not allege harms to human health or welfare,

such as "current and actual danger to the health of the individual and the health of their

progeny," *Alshawy v. United States Citizenship & Immigr. Servs.*, No. CV 21-2206, 2022 WL

970883, at *6 (D.D.C. Mar. 30, 2022) (quotations omitted), or "[p]rolonged separation from a

spouse, fiancé, or other immediate family member," *Khan*, 2024 WL 756643, at *5.  The

burdens associated with Plaintiff's life being put "on hold" are shared by almost everyone

awaiting visa adjudication and "[a]t most . . . weigh only slightly in support of finding an

unreasonable delay."  *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 53 (D.D.C. 2021).  Similarly,

economic harms such as postponed career opportunities are more "tolerable" costs of delay than

risks to health or welfare. *TRAC*, 750 F.2d at 80. The third and fifth factors thus add little weight to Plaintiff's side of the scale.

### iii.    Factor four

The fourth *TRAC* factor favors Defendants. They correctly observe that, in effect, the result Plaintiff seeks "would be merely to expedite the consideration of [his] application ahead of others." MTD at 31. Although that result might be less disruptive than a permanent change to Defendants' policies, it could still undermine their priorities. "The agency is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991). "Processing capacity is presently a zero-sum game, granting plaintiffs' request to expedite would necessarily mean additional delays for other applicants—many of whom undoubtedly face hardships of their own." *Murway v. Blinken*, No. CV 21-1618, 2022 WL 493082, at *4 (D.D.C. Feb. 16, 2022) (quotation omitted). As a result, "[r]elief that would simply reorder a queue of applicants seeking adjudication is generally viewed as inappropriate when no net gain in such adjudications is achieved." *Tate v. Pompeo*, 513 F. Supp. 3d 132, 149 (D.D.C. 2021) (quotation omitted). Plaintiff offers no reason to depart from that general rule here. Accordingly, this factor weighs in Defendants' favor.

### iv.    Factor six

The sixth *TRAC* factor observes that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'" *TRAC*, 750 F.2d at 80 (quoting *Pub. Citizen Health Rsch. Grp. v. Food & Drug Admin.*, 740 F.2d 21, 34 (D.C. Cir. 1984)) (quotation omitted). Plaintiff concedes, however, that "there is no evidence that Defendants have engaged in any improper conduct." Opp'n at 18. This factor is therefore inapplicable.

\*     \*     \*

On balance, the *TRAC* factors favor Defendants.  Under the first and second, the length of Defendants' delay is within the range that courts have consistently declined to consider unreasonable as a matter of law.  Under the third and fifth, Plaintiff has not alleged that the delay has caused any significant harm to his health or welfare.  And under the fourth factor, the relief Plaintiff seeks would disrupt the government's priorities and allow Plaintiff to jump the queue of similarly situated people awaiting further action on their visa applications.  Although the court acknowledges the difficulties that Plaintiff faces because of the delay, as a matter of law, it cannot conclude that Plaintiff has alleged specific facts giving rise to an inference of unreasonable delay, a necessary threshold criterion for establishing this court's mandamus jurisdiction.  Accordingly, the Complaint must be dismissed.

## IV.     CONCLUSION

For these reasons, the court will GRANT Defendants' Motion to Dismiss, ECF No. 6.  A corresponding Order will accompany this Memorandum Opinion.

Date: July 22, 2024

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge